[No. F019160. Fifth Dist. Sept. 23, 1994.]

GERALD GARCIA, JR., et al., Plaintiffs, v.
HYSTER COMPANY, Defendant and Respondent;
TRAVELERS INSURANCE COMPANY, Intervener and Appellant.

## COUNSEL

Mullen & Filippi, Pamela L. Goe, Yohman & Jensen and Rick Jensen for Intervener and Appellant.

Marrone, Robinson, Frederick & Foster and J. Alan Frederick for Defendant and Respondent.

## OPINION

SILVEIRA, J.*—

### PROCEDURAL HISTORY

On October 1, 1990, plaintiffs Gerald Garcia, Jr., and Laura Garcia filed a complaint against defendant/respondent Hyster Company. The complaint charged that, while operating an "order picker" designed and manufactured by Hyster Company, Gerald Garcia was crushed between the order picker and a cross-beam. The complaint sought damages for Gerald Garcia's physical and mental injuries and medical expenses, his lost earnings, and Laura Garcia's loss of consortium.

Hyster Company answered with a general denial and various affirmative defenses, among which were the allegations that Gerald Garcia's employer, North American Phillips Lighting Corporation, had workers' compensation insurance and that said insurance had "expended certain sums" toward Gerald Garcia's medical care and disability payments. Consequently, Hyster Company sought a reduction of any damages awarded by the amount of medical care, treatment, and disability payments made by the workers' compensation carrier.

On the same day it answered the complaint, Hyster Company cross-complained against North American Phillips Lighting Corporation, again seeking a setoff against any award on the complaint of the workers' compensation benefits, if any, paid to Gerald Garcia.

The matter was set for a mandatory settlement conference on May 1, 1992, with trial set for May 26. The settlement conference was continued to

---

*Judge of the Tulare Superior Court sitting under assignment by the Chairperson of the Judicial Council.

May 22. During the intervening period, plaintiff in intervention/appellant Travelers Insurance Company, with the court's permission, filed its complaint in intervention against Hyster Company. Travelers alleged that, as a proximate result of Hyster's negligence, it had been compelled to pay workers' compensation benefits to Gerald Garcia in an undetermined amount; the complaint sought reimbursement for sums expended in paying workers' compensation benefits to Gerald Garcia, and "[r]easonable litigation expenses and reasonable attorney's fees incurred in preparation and prosecution of this action pursuant to Labor Code Section 3856 . . . ."

On May 28, 1992, Hyster Company made a statutory compromise offer to Travelers of $5,001, pursuant to Code of Civil Procedure[1] section 998. The offer was not accepted by Travelers.

On May 29, 1992, the Garcias' suit against Hyster Company settled for $62,500; one term of the settlement was that each party bear its own fees and costs.[2]

On June 5, 1992, Hyster Company answered the complaint in intervention with a general denial.

The complaint in intervention against Hyster Company came on for trial on September 29, 1992. During the course of the trial, intervener Travelers failed to qualify its expert with respect to the safety hazards of the Hyster order picker or as to the adequacy of any manuals or warnings that may have existed with respect to the use of the order picker. After Travelers rested its case-in-chief, Hyster Company moved for a nonsuit. The court granted the motion and the jury was excused.

Hyster Company subsequently filed an amended memorandum of costs seeking $30,420.57 in costs. Travelers' subsequent motion to tax costs requested that various items be stricken because the costs had been incurred prior to Travelers' filing of its complaint in intervention—in other words, because there were costs incurred in the defense of Garcias' suit, not Travelers'.

Hyster Company also moved for an award of attorney fees under section 2033, subdivision (o) based on Travelers' denial of the truth of certain request for admissions propounded by Hyster Company. Hyster alleged it was required to prove these assertions at trial and had done so.

After hearing the motions to tax costs and for attorney fees, the court awarded Hyster Company $30,420.57 in costs, finding that they were "reasonable, necessary and appropriate to the defense of this case." In addition,

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.
[2]Voluntary dismissal was eventually entered by the Garcias on October 8, 1992.

the court awarded Hyster attorney fees of $18,245.73 on its section 2033, subdivision (*o*) motion.

A timely appeal was taken by Travelers.

FACTS

The instant case arises out of an October 5, 1989, accident involving a piece of equipment manufactured by Hyster Company.

Gerald Garcia, Jr., was hired by North American Phillips Lighting Corporation in the fall of 1989 as a warehouseman. Among his duties was the operation of certain equipment at the warehouse, including forklifts and order pickers. He had considerable experience operating such equipment during his 20-year stint in the United States Air Force. He was not given any training at Phillips in the operation of the equipment on premises, nor was he ever "checked out" on the equipment.

The forklifts in use at the Phillips warehouse were designed so that the driver sits while operating the vehicles; tines located in front of the driver can be moved vertically. Forklifts were normally used to insert or remove 40-inch by 48-inch pallets from the rack storage system in the warehouse, approaching the racks straight on. It was expected that the pallets be inserted flush with the front of the rack system.

Order pickers are superficially similar to forklifts in that they have tines that can be moved vertically. However, the tines are located *behind* the operator; the operator stands during operation of the order picker, and the operator's station moves up and down with the tines. The intended mode of operation involves the operator driving the order picker *parallel* to the racks of pallets; he can stop and remove individual items from stored pallets by hand, placing them on a pallet resting on the order picker's tines behind him. Once the pallet is loaded with a customer's order, the pallet can then be delivered to the loading dock. As Garcia testified, "[t]he order picker is to pick one box out of that pallet, not the whole pallet."

The primary movement controls of the Hyster Company order pickers in use at Phillips' warehouse were fairly simple: a steering wheel and a motorcycle-type throttle to control speed and direction. Once moving, the vehicle could be braked through a procedure known as "plugging," where the operator twists the throttle in the opposite direction; this braking procedure was clearly set out in the operator's manual. The order pickers were also equipped with a "deadman's switch"; removal of the operator's foot

from the switch causes the order picker to stop. Additionally, an emergency cut-off switch on the dashboard could be used to stop the vehicle.

At Phillips, at the time in question, order pickers and forklifts were generally used indiscriminately to do pallet insertion. In order to insert a pallet using an order picker, the operator has to back the vehicle perpendicular to the rack, either looking over his shoulder or standing backwards with his hands reaching behind him to operate the controls. To place the pallet flush with the rack, the driver would have to come within inches of the rack system. A 5-foot-11-inch, 165-pound operator would necessarily make physical contact with the rack system in inserting a pallet using the order picker. The record suggests that Garcia was somewhat larger than that.

Garcia knew of two "approved" ways of braking an order picker: the deadman's switch and the emergency cut-off switch. He professed not to know about plugging, although the process was described in the operator's manual for the Hyster order picker, with which Garcia was "familiar" and which he "presume[d]" was on the order picker at the time of the accident. Similarly, his then supervisor, Steven Geraci, testified he only learned of the plugging procedure from the instant lawsuit.

Garcia testified that, had he known about the plugging procedure, he would not have used it: "A. If someone told me to do that, I wouldn't do that. There's no control. The control is, for me, that dead-man switch. If I want to stop I have to pull my foot off of the dead-man switch. So no matter who said what to me, I would not use that. I wouldn't use that method at all."

On the day of the accident, Garcia was using a Hyster order picker to insert a pallet into the rack system. As he backed toward the rack, looking over his shoulder, he was pinned between the rack and the order picker. According to Garcia, he had removed his foot from the deadman's switch to stop the order picker, but it kept rolling. A subsequent check of the order picker failed to reveal a braking defect.

Garcia suffered significant injuries. Travelers' total medical benefits paid out were $43,557.11. Various other payments made to and on behalf of Garcia amounted to some $15,958.16.

## DISCUSSION

I. *Did the court err in holding Travelers liable for costs incurred by Hyster prior to Travelers' complaint in intervention?*

In holding Travelers liable for costs incurred by Hyster Company before the filing of Hyster's complaint in intervention, the lower court ruled in pertinent part:

"3. Even though the Complaint in Intervention was not filed until May 20, 1992, it is clear that Travelers was intimately involved in asserting its lien rights from the very beginning of this lawsuit. Long before May 20, 1992, an agreement was reached between then Plaintiffs' counsel and Travelers regarding the distribution of any settlement or judgment funds and the splitting of costs and expenses to assist in the prosecution of this case against Hyster. The ethics of such an agreement, although not directly relevant to this ruling, are highly questionable in light of the strong evidence of employer's negligence.

"4. Pursuant to the unique facts of this case, Travelers was, in reality, a silent partner with the Plaintiffs in pursuing this litigation. *For public policy reasons, there is no reason why Travelers should not be treated as if it were a real party in interest long before the date it finally filed its Complaint in Intervention.*" (Italics added.)

It is the position of Hyster Company on appeal that the cost award should be sustained on the basis of those findings as well as any discretion given the court to shift costs under section 998.

The basic provision supporting cost awards is section 1032, which states in pertinent part: "(b) Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." It appears to be well established that costs awarded under section 1032, or its predecessor statutes, against a plaintiff in intervention may not pertain to the period prior to which he or she was a party to the action. (*Burrow* v. *Pike* (1987) 190 Cal.App.3d 384, 400-401 [235 Cal.Rptr. 408]; *Catello* v. *I.T.T. General Controls* (1984) 152 Cal.App.3d 1009, 1014 [200 Cal.Rptr. 4]; *Mann* v. *Superior Court* (1942) 53 Cal.App.2d 272, 280 [127 P.2d 970]; *Whitten* v. *Dabney* (1915) 171 Cal. 621, 632-633 [154 P. 312]; *People* v. *Campbell* (1902) 138 Cal. 11, 23 [70 P. 918].) Hyster Company contends, however, that the trial court's award of costs is sustainable under an exception to this general rule, contained in section 998.

Section 998 provides in part as follows:

"(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his or her

costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court, in its discretion, may require the plaintiff to pay the defendant's costs *from the date of filing of the complaint* and a reasonable sum to cover costs of the services of expert witnesses . . . ." (Italics added.)

The issue thus presented is: did the Legislature intend by this to permit a plaintiff in intervention to be held liable for costs dating from the filing of the complaint rather than the complaint in intervention?

While section 998 does not specifically refer to a plaintiff in intervention, it is reasonable to conclude that the terms employed in section 998 are to be interpreted in the same manner as they are in sections 1031 and 1032. Section 998, subdivision (a), as quoted, *ante*, provides specifically that ". . . costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section." Section 1032, subdivision (a)(3) provides as follows: " 'Plaintiff' includes a cross-complainant or a party who files a complaint in intervention." Section 1032, subdivision (a)(1) defines a "complaint" as including a "cross-complaint." Nowhere does section 1032 include within the term "complaint" a complaint in intervention.

While section 1032 does not specifically define a complaint as including a complaint in intervention, it does, as previously noted, include within the definition of plaintiff "a party who files a complaint in intervention." (§ 1032, subd. (a)(3).) It seems reasonable, however, that we should construe the word "complaint" as used in sections 1032 and 998 to include a complaint in intervention. Section 1032, subdivision (a)(4) clearly evidences a legislative intent to award costs to a "prevailing party." It is a matter of logic that for a plaintiff in intervention to be a "prevailing party," the plaintiff in intervention would have to prevail on the complaint in intervention. This construction harmonizes the application of section 998 to existing law.

■ It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party. (*Perko's Enterprises, Inc.* v. *RRNS Enterprises* (1992) 4 Cal.App.4th 238, 241 [5 Cal.Rptr.2d 470]; *Williams* v. *Atchison etc. Ry. Co.* (1909) 156 Cal. 140 [103 P. 885].) "The measure of the statute is the measure of the right." (*Strickland* v. *Becks* (1979) 95 Cal.App.3d Supp. 18, 20 [157 Cal.Rptr. 656]; see *Agnew* v. *Cronin* (1959) 167 Cal.App.2d 154, 157 [334 P.2d 256].) ■ Nowhere in section 998 is there express provision made for the award of costs in favor of a prevailing defendant against a plaintiff in intervention for any period preceding the filing of the complaint in intervention. Section 998 must be strictly construed in favor of the party sought to be

subjected to its operation. (*Hutchins* v. *Waters* (1975) 51 Cal.App.3d 69, 72-73 [123 Cal.Rptr. 819].)

Nothing contained in section 998 appears to create an exception to the general rule of section 1032 barring preintervention costs. This conclusion is reinforced by *Catello* v. *I.T.T. General Controls, supra*: ". . . parties in intervention are either entitled to an award of costs or may be held liable for costs in the same manner as the original parties. Liability for costs will be fixed in any given case by determining the intervener's alignment with the original parties and will be limited to those costs incurred while the intervener was a party to the action." (152 Cal.App.3d at p. 1015.) Because the right to recover costs is purely statutory, and because there is no statutory authorization to allow a court to determine that a plaintiff in intervention is, prior to intervention, a "real party in interest" for purposes of applying section 998, we hold that the trial court could not properly award costs from the date of the filing of the complaint.

## II. *Did the court err in the fact and amount of the attorney fee award?*

It appears that on June 30, 1992, Hyster Company served on Travelers a request for admissions (see § 2033) in which Hyster Company set out 15 separate purported factual statements for Travelers' response. The first six requests pertained to the total amount of Gerald Garcia's damages, ranging from "at least $250,000.00" to "at least $500,000.00." The seventh sought an admission that Garcia's employer was negligent "in the occurrence of the incident" that resulted in Garcia's injuries. The eighth sought the admission that the employer's negligence "was a legal cause" of Garcia's damages. The ninth through fifteenth related to the percentage of employer negligence contributing to Garcia's injuries; the range here was from "at least 20%" to "at least 50%."

Travelers responded to the request for admissions on July 30, 1992, by flatly denying all 15 requests. Travelers thus denied *any* employer negligence, and denied that Garcia's damages equaled or exceeded $250,000.

On October 29, 1992, after obtaining nonsuit on Travelers's complaint in intervention, Hyster Company filed its notice of intent to move for an award of costs and attorney fees pursuant to section 2033, subdivision (*o*) on the ground that Travelers "failed to properly respond to Requests for Admission which resulted in an unnecessary trial." In the supporting papers, Hyster

Company's attorney explained that Travelers' own expert,[3] when deposed *prior* to the request for admissions, "freely admitted" that Garcia's employer had been "significantly negligent." In addition, Hyster Company pointed out how the testimony of Travelers' own trial witnesses indicated employer negligence. Hyster Company claimed some $18,245.73 in "attorneys fees, costs and other expenses associated with the trial of this case and proving those Requests for Admissions numbered 1 through 15 . . . ."

Travelers responded, in essence, that its denials had not added to Hyster Company's litigation costs at all and that no award should be made. In brief, Travelers' position was that even if it had admitted the existence of *some* employer negligence, trial would still have been necessary to determine the degree of that negligence, the existence and degree of Garcia's negligence, and the question of liability. Travelers also argued that nothing in Hyster Company's showing regarding the purported $18,245.73 in fees showed either (1) what portion of the fees had been incurred subsequent to Travelers' denial of the request for admissions, or (2) what portion of the entire figure pertained to the issues covered by the request for admissions.

The lower court ruled:

"7.   In spite of the fact this case involves strong evidence of employer's negligence, Travelers flatly denied all Requests for Admission propounded upon it by Hyster. Hyster was therefore compelled to prepare a full defense on all issues. This position was adopted by Travelers even though their own expert witness admitted employer's negligence.

"8.   Pursuant to Code of Civil Procedure section 2033(o), Hyster is awarded its attorney fees in the reasonable amount of $18,245.73."

The first question presented is whether the court had the authority to make a costs and fees award under section 2033. Subdivision (*o*) of that statute provides: "(*o*) If a party fails to admit . . . the truth of any matter when requested to do so under this section, and if the party requesting that admission thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses included in making that proof, including reasonable attorney's fees. The court shall make this order unless it finds that (1) an objection to the request was sustained or a response to it was waived . . . , (2) the admission sought was of no

---

[3]The court disallowed him as an expert witness at trial.

substantial importance, (3) the party failing to make the admission had reasonable ground to believe that that party would prevail on the matter, or (4) there was other good reason for the failure to admit."

Here, there is no doubt but that Hyster Company made the requests and that Travelers denied them. The next question under section 2033, subdivision (*o*) is whether Hyster Company later proved "the truth of that matter" asserted in the requests, the truth of which were denied by Travelers.

As noted, *ante*, Hyster was granted a nonsuit at the close of Travelers' case. As stated in *John Norton Farms, Inc.* v. *Todagco* (1981) 124 Cal.App.3d 149, 160 [177 Cal.Rptr. 215], the motion " '. . . concedes the truth of the facts proved, but denies that they, as a matter of law, sustain the plaintiff's case.' "

The record evidence in this case, including the testimony of plaintiff Garcia, tends to show the employer was using untrained employees overseen by inadequately trained supervisors to operate order pickers for a task for which they manifestly had not been designed or intended. Since this evidence was presented as part of Travelers' case and formed a basis for nonsuit, it can be concluded that employer negligence was in fact "proved." Section 2033, subdivision (*o*) clearly vests in the trial judge the authority to determine whether the party propounding the admission thereafter proved the truth of the matter which was denied. There is no question here but that the evidence would sustain a finding that Hyster Company proved the facts relating to request for admissions No. 7: Garcia's employer was negligent "in the occurrence of the incident" that resulted in Garcia's injury.

Travelers seeks to justify its denial of the requested admissions on the grounds that they called for opinion or conclusions of fact. This contention presumably falls within section 2033, subdivision (*o*)(4), to wit, "there was other good reason for the failure to admit." This is not well taken. A request for admissions may properly be used to establish opinions relating to fact. (See *Chodos* v. *Superior Court* (1963) 215 Cal.App.2d 318, 323 [30 Cal.Rptr. 303].) A request for admissions may also require an application of law to fact. (See *Burke* v. *Superior Court* (1969) 71 Cal.2d 276, 282 [78 Cal.Rptr. 481, 455 P.2d 409].) The trial court further made an express finding supported by the record that Hyster Company had in fact proved employer negligence at trial.

Travelers next contends that even if it had admitted negligence in causation (request for admissions Nos. 7 and 8), "exactly the same amount of time

would have been spent at trial for Hyster to dispute liability, the amount of negligence of the plaintiff, the amount of negligence of the employer, and the value of plaintiff's [*sic*] lawsuit." In other words, even had Travelers admitted some employer negligence, Hyster would still have been required to put on proof with respect to those issues.

We initially note that Travelers appeared to waive this point in the lower court. During the following exchange between the court and counsel for Travelers, Travelers seems to concede that its discovery responses resulted in increased litigation costs to Hyster Company:

"THE COURT: Would you agree with Mr. Fredericks' [*sic*] position that, in effect, by denying any employer negligence that, in effect, his client [Hyster Company] was forced to proceed with this case just as if Mr. Garcia was still a participant?

"Ms. GOE: *They did incur attorneys' fees in proceeding, in us proceeding with the case in the fashion that we did, yes.*" (Italics added.)

Even were we to discount the apparent concession, in view of our ultimate determination on this issue, we regard this as a question more appropriate for the lower court to resolve on remand.

■ Did the court abuse its discretion in setting the amount awarded? The apparent foundation for the award was the declaration of Hyster Company's counsel in which he claimed some $18,245.73 in "attorneys fees, costs and other expenses associated with the *trial of this case and proving those Requests for Admissions* numbered 1 through 15," all incurred after June 30, 1992, the date Hyster Company propounded its request for admissions. (Italics added.) This was the precise amount awarded by the court. As noted, section 2033, subdivision (*o*) gives the trial court the discretion to award attorney fees against a party to whom the request was directed to pay the reasonable expenses included in making that proof if that party to whom the request was directed fails to admit the truth of the matter and the requesting party *thereafter* proves the truth of the matter. In this case, Hyster admits the $18,245.73 reflects in part fees and costs incurred between June 30, 1992, the propounding of the request for admissions, and July 30, 1992, Travelers' service of its denial. Since section 2033, subdivision (*o*) specifically would not be operative until after Travelers served its denial, any expenses incurred prior to July 30 were improperly awarded.

It should be further noted, the statute authorizes only those expenses "incurred in making that proof," i.e., proving the matters denied by the

opposing party. Here, Hyster Company likely devoted at least some resources to preparation of proof that it was not negligent in the design of its order pickers, and perhaps toward a showing of operator negligence; however, these issues were completely outside the scope of the request for admissions. Nothing in the bare-bones showing made below, or in the lower court's award, reflects that any consideration was given to the fact that Hyster Company's trial preparation might extend beyond those areas covered in the request for admissions.[4]

Hyster Company argues that had Travelers admitted even some employer liability the case might have gone to arbitration rather than trial. The lower court's award, however, fails to allow for the fact that some attorney fees and expenses would have been generated as a result of arbitration. Instead, the court essentially directed that Travelers assume total responsibility for Hyster Company's litigation costs from June 30, 1992, forward. This was far more than reasonable compensation under the circumstances.

Finally, the award was made based solely on the declarations of Hyster Company's counsel, who failed to set out either his hourly fee or any accounting of time spent on the case. While the trial judge doubtless has the discretion to base an award on an informed opinion of " 'the value of professional services rendered' " in his or her courtroom (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]), the record here shows that the court relied strictly on a conclusionary statement of counsel, and establishes that counsel's own assessment includes matters not properly the subject of a section 2033 sanction. The only reasonable conclusion is that the trial court abused its discretion in awarding Hyster Company everything it asked for.

## DISPOSITION

That portion of the trial court's order and judgment granting defendant Hyster Company's costs from the date of filing of the complaint rather than the complaint in intervention is reversed and remanded for recalculation. Hyster Company is entitled to at most a judgment for its costs from the date of filing of the complaint in intervention. Insofar as the judgment and order of the trial court grants attorney fees under section 2033, subdivision (*o*), the

---

[4]Hyster's counsel argued before this court that "virtually all" none of the expenses and fees incurred after July 30, 1992, and included in the $18,245.73 related to those issues covered by the request for admissions. No such claim was made below. As we are reviewing the lower court's exercise of discretion based on the record before that court, we elect to disregard appellant's unsworn and undocumented representation.

judgment is reversed and remanded for redetermination of costs and fees in accord with this opinion.

Ardaiz, P. J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied October 20, 1994.