[No. B136677. Second Dist., Div. Two. June 14, 2001.]

THE PEOPLE ex rel. BILL LOCKYER, as Attorney General, etc.,
Plaintiff and Appellant, v.
FREMONT GENERAL CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.E.

COUNSEL

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, Ronald A. Reiter, Michele R. Van Gelderen, Michael R. Botwin and Margaret Reiter, Deputy Attorneys General, for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Paul A. Richler, Michael C. Lieb and Randi Perry Spallina for Defendant and Respondent.

## OPINION

**DOI TODD, J.—**

### I. INTRODUCTION

The People of the State of California (People), represented by the Attorney General and a number of district and city attorneys, sought civil penalties, restitution, and injunctive relief against Fremont Life Insurance Company (Fremont Life) and its parent company, Fremont General Corporation (defendant) in an action alleging unfair business practices and false

advertising under Business and Professions Code sections 17200 and 17500. The People alleged Fremont Life and others operated a "living trust mill" in which salespeople, posing as experts in estate planning, engaged in the unlawful practice of law, advised senior citizens to establish a living trust, and to invest in Fremont Life annuities. Among other things, seniors purchasing the annuities were allegedly not advised of substantial "premium charges" and penalties for "surrender" or death within the first decade after purchase.

Prior to trial, defendant served an offer under Code of Civil Procedure section 998[1] to allow judgment to be taken against it for $2 million. The People did not accept the offer.[2]

At trial, the People prevailed against codefendant Fremont Life, obtaining injunctive relief, civil penalties of over $2.5 million, and an order requiring that Fremont Life offer to return the annuitants' principal and accrued interest less the "surrender" charge, without deducting the "premium" charge.

The People failed, however, to establish that defendant was liable as Fremont Life's "alter ego," or on conspiracy, aiding and abetting or agency theories. The trial court granted defendant's motion for judgment pursuant to section 631.8 made at the close of the People's case. Judgment was entered accordingly.

As a result of the People's rejection of defendant's section 998 offer, defendant submitted a cost memorandum in which it sought recovery of over $880,000, including substantial expert witness fees. The People filed a motion to tax costs. The trial court taxed a small amount, but otherwise awarded defendant the vast majority of its costs under sections 1032 and 1033.5, and over $500,000 for expert witness fees as discretionary costs allowed under section 998.

The People challenge the award of expert witness fees. They claim the trial court abused its discretion in awarding those fees as discretionary costs because defendant's section 998 offer was either not valid or was reasonably rejected. The People also claim "public policy" precludes recovery of those costs in a "civil law enforcement" action under Business and Professions Code sections 17200 and 17500.

---

[1]Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]The People's motion under section 909, asking this court to "take additional evidence" of codefendant Fremont Life's separate section 998 offer to allow judgment to be taken against it individually is denied. The issues in this appeal involve only the validity and ramifications of *defendant's* section 998 offer.

We disagree with each of the People's contentions. Defendant's section 998 offer was valid. As the plaintiff in this action, the People were properly subjected to the cost-shifting features of section 998 as a consequence of their rejection of defendant's formal $2 million settlement offer.

## II. DISCUSSION

### A. *Statutory Scheme.*

■ "It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party. [Citations.] 'The measure of the statute is the measure of the right.' [Citations.] . . . Section 998 must be strictly construed in favor of the party sought to be subjected to its operation. [Citation.]" (*Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 732-733 [34 Cal.Rptr.2d 283].) Nevertheless: "The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function. [Citation.]" (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046].)

■ Section 998, subdivision (a) provides: "The *costs* allowed *under Sections 1031 and 1032* shall be *withheld or augmented* as provided in this section." (Italics added.) Under section 1032, subdivision (b): "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Under section 1032, subdivision (a)(4): " 'Prevailing party' includes the party with a net monetary recovery . . . , *and a defendant as against those plaintiffs who do not recover any relief against that defendant.* When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and *under those circumstances, the court, in its discretion, may allow costs or not . . . .*" (Italics added.)

The items that may be recovered as costs under section 1032 are listed in section 1033.5. Under section 1033.5, subdivision (b)(1), "[f]ees of experts not ordered by the court" are "not allowable as costs, except when expressly authorized by law."

Section 998 expressly authorizes augmentation of recoverable costs to include expert witness fees under certain circumstances. Under section 998, subdivision (b): "[A]ny party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered

in accordance with the terms and conditions stated at that time. [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . . [¶] (2) If the offer is not accepted prior to trial or arbitration, within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn . . . ." The consequences of a plaintiff's failure to accept an offer to allow judgment to be taken in accordance with the stated terms and conditions are set forth in section 998, subdivision (c)(1): "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. *In addition, in any action or proceeding other than an eminent domain action*, the court . . . , *in its discretion, may* require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses . . . ." (Italics added.)

## B. *The People's Public Policy Arguments.*

A number of the People's arguments on appeal are premised on the notion that it would be against public policy to allow a defendant to offset expert witness fees allowed under section 998 against the civil penalties or restitution recoverable (along with injunctive relief) in a Business and Professions Code section 17200/17500 action. Here there could be no offset as the People recovered nothing. Had the People obtained some form of relief, whether an injunction, civil penalties or restitution, the trial court would not necessarily have been required to engage in a "dollar for dollar" offset of defendant's expert witness fees against that relief.

Section 1032 provides express guidelines for determining responsibility for costs where a party seeks nonmonetary relief. If the People had demonstrated entitlement to nonmonetary relief, the court would have been required to determine which party had "prevailed," and "under those circumstances" could have exercised its discretion under section 1032 to "allow costs or not." (§ 1032, subd. (a)(4).) In addition, before additional costs could be imposed under section 998, the trial court would be required to exercise its discretion to determine whether, in light of the purposes of the People's action, even partial success in obtaining injunctive relief or an order requiring restitution and/or civil penalties might have yielded a "more favorable" judgment or award than the defendant's offer of money alone.

Here the People did not demonstrate that they were entitled to *any* relief from defendant. They do not appeal the trial court's determination under section 631.8 that the People's evidence was insufficient to require defendant to put on its case. Clearly defendant was the "prevailing party" under

section 1032, and the People failed to obtain "a more favorable judgment or award" than the $2 million section 998 offer.

This appeal thus presents no issue of "offsetting" expert witness fees against sums ordered to be paid as restitution or civil penalties. The question is whether there is any reason this defendant, having obtained a "defense" judgment after its offer of $2 million to settle the action was rejected, should nevertheless be precluded from recovering its costs for expert witnesses under section 998.

The People argue that in this Business and Professions Code section 17200/17500 action, they sought to protect the public against deceptive conduct by obtaining injunctive relief, civil penalties and restitution, and should therefore be treated differently from the "run of the mill" plaintiff seeking compensatory damages. In support of their argument that the Legislature could not have intended for section 998 to apply to the People in such a civil law enforcement action, the People claim that the final amount of civil penalties and restitution that may be awarded in such actions is within the sound discretion of the trial court and is inherently unpredictable, so that it is unfair to saddle prosecuting agencies with the burden of guessing whether to accept a given settlement offer to avoid responsibility for additional costs under section 998.

The language of section 998, subdivision (c)(1) indicates that the Legislature has already considered the types of litigation in which the People are likely to become involved and whether they should be subject to the statute. The Legislature has declared that where a plaintiff fails to obtain a more favorable judgment than that offered by the defendant, the trial court has discretion to require the plaintiff to pay expert witness fees "in any action or proceeding *other than an eminent domain action*." (§ 998, subd. (c)(1), italics added.)

The People's policy arguments ignore the Legislature's plain expression of public policy in section 1028, which provides: "Notwithstanding any other provisions of law, when the State is a party, costs *shall be awarded against it on the same basis as against any other party* and, when awarded, must be paid out of the appropriation for the support of the agency on whose behalf the State appeared." (Italics added.)

In light of these provisions we perceive no intent by the Legislature to exempt the People from the operation of section 998 in civil law enforcement actions under Business and Professions Code sections 17200 and

17500. The cost provisions of sections 1028, 1032, 1033.5, and 998 contemplate the situation presented here, and set forth the determinations to be made by the trial court. Under those sections, a plaintiff seeking nonmonetary relief, who fails to obtain any relief against the defendant after failing to accept a more favorable offer of judgment, shall pay the defendant's costs. In the trial court's discretion, those costs may be augmented by requiring that the plaintiff pay a reasonable fee for the services of defendant's expert witnesses.

The fact that the plaintiff in this case happened to be the People of the State of California is of no statutory consequence.[3] Applying section 998 to the People in a civil law enforcement action is consistent with the mandate of section 1028 that costs be awarded against the State as against any other party. It also encourages prosecuting agencies to carefully consider the merits of a case and an offer to settle to determine whether public funds will be wisely spent in pursuit of the litigation or whether settlement is appropriate. For the People to overturn the trial court's application of section 998 in this case, they must demonstrate error "on the same basis as against any other party." (§ 1028.)

### C. *Validity of Defendant's Offer.*

The People contend defendant's section 998 offer was not valid. We disagree.

"Since section 998 involves the process of settlement and compromise and since this process is a contractual one, it is appropriate for contract law principles to govern the offer and acceptance process under section 998." (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338].) However: "[G]eneral contract law principles should apply to section 998 offers and acceptances only where such principles neither conflict with the statute nor defeat its purpose. [Citation.] As recognized in numerous Court of Appeal decisions, the clear purpose of section 998 . . . is to encourage the settlement of lawsuits prior to trial. [Citations.]" (*Ibid.*)

The burden of assuring that an offer complies with section 998 falls on the offeror. (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 585 [11 Cal.Rptr.2d 820].) The People argue that a section 998 offer "must be

---

[3]Nor do we perceive a violation of the "separation of powers" doctrine as argued by the People. The trial court did not compel the Attorney General to settle the case on particular terms, as was the problem addressed in *People v. Cimarusti* (1978) 81 Cal.App.3d 314 [146 Cal.Rptr. 421]. The court merely awarded costs to the prevailing party pursuant to the terms of the governing statutes.

sufficiently specific to allow the offeree to evaluate it and make a reasoned decision about whether to accept it." (Cf. *Taing,* at p. 585.) The general contract law principle is that "[i]n order for acceptance of a proposal to result in the formation of a contract, the proposal '. . . must be sufficiently definite . . . that the performance promised is reasonably certain.' . . ." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 [71 Cal.Rptr.2d 265], citations omitted.)

Defendant's formal written offer stated: "Fremont General Corporation hereby offers to have judgment entered against it and in favor of Plaintiff the People of the State of California in the above-entitled action, for the total sum of two million dollars ($2,000,000), with each party to bear its own costs and attorneys' fees. If you accept this offer consistent with Section 998, please sign and date below, and file this offer of judgment with the clerk, who is hereby authorized to enter judgment in accordance with the terms hereof."

The People contend this offer was "fatally uncertain," because it failed to allocate the sum offered between restitution and civil penalties, did not designate how any restitution was to be awarded to the alleged "victims," and did not designate the manner in which any civil penalties were to be allocated among the various prosecuting agencies. The People cite no authority for the proposition that a defendant cannot make a valid offer to settle under section 998 unless the sum offered is specifically allocated among the various forms of relief sought by the plaintiff. "To the contrary, case law interpreting the good faith requirement allows for great flexibility in customizing pretrial settlement offers. . . . '[T]he statute does not indicate any intent to limit the terms of the compromise settlement or the type of final disposition.' " (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1264 [74 Cal.Rptr.2d 607].)

The People's argument relies on an inapposite body of decisions in which lump sum or conditional settlement offers made to multiple plaintiffs or defendants were deemed too uncertain to trigger the cost-shifting provisions of section 998. This was either because the court could not ascertain whether a particular litigant had in fact received a more favorable judgment, or because the lump sum offer to multiple parties made it impossible for a particular offeree "to evaluate it and make a reasoned decision whether to accept without the additional burden of obtaining the acceptance of [coparties] or suffering from their refusal to settle, especially when that refusal may have been unreasonable." (*Taing v. Johnson Scaffolding Co., supra,* 9 Cal.App.4th at p. 585.)

The problems of uncertainty presented by lump-sum or conditional settlement offers to multiple parties are not presented here. Defendant agreed unconditionally to allow judgment to be taken against it for a specific amount in favor of the single plaintiff.

The People's argument that the defendant should have borne the burden of allocating settlement funds among the remedies also ignores the fact that a section 998 offer, even if accepted and entered as a judgment, is still a settlement. Under section 998, subdivision (f): "Any judgment or award entered pursuant to this section *shall be deemed to be a compromise settlement.*" (Italics added.) A compromise settlement is not an admission or determination of actual liability on the claims asserted in the complaint, or for the specific types of relief sought by the plaintiff. (Cf. Evid. Code, § 1152.)

The defendant in this case was ultimately determined to have *no* liability. The purpose of section 998 is to encourage the settlement of lawsuits prior to trial. That purpose is not served by preventing an "innocent" defendant, who nevertheless seeks to avoid the costs and uncertainty of future litigation in which the superior resources of the state have been arrayed against it, from being able to shift the costs attendant to a refusal to settle unless the defendant is willing to accept the plaintiff's own view of the types of relief available, indulge in the fiction that it is liable for each of the types of relief sought, and allocate specific portions of the amount it is willing to pay to each type of relief. This is an unreasonable burden to place on a defendant seeking to settle, and undercuts, rather than promotes, the goal of encouraging settlement.[4] Requiring such allocation would unjustifiably provide an intransigent plaintiff with multiple opportunities to argue that some portion of an otherwise adverse result at trial was actually "more favorable" than some discrete portion of the defendant's settlement offer.

Although there is no evidence the People declined to accept defendant's offer because of any issue concerning proper distribution of the proceeds, they now claim that had they accepted defendant's money, they might not

---

[4]Cf. *Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 708 [235 Cal.Rptr. 510]: "Plaintiff does not cite, nor do we find, any authority holding that a defendant must take into consideration any liens pending against a possible settlement or judgment when evaluating his case for the purpose of making a settlement offer. Defendant's duty under section 998 is to make a reasonable offer under the circumstances. To hold otherwise could lead to absurd results, especially when such offer is contemplated by a liability-free defendant. For instance, assuming defendant was aware of the lien, he would have had to offer plaintiff $41,239.64 ($5,000 plus $36,239.64) to enable plaintiff to net $5,000 before costs and attorney's fees. This is an unreasonable burden to place on defendants and is contrary to the intent of the Legislature in the passage of section 998."

have known what to do with it. They argue that defendant's "offer created an unresolvable dilemma for the People by requiring them to allocate a final judgment between the government and the individual consumers who were entitled to restitution." Pointing out that civil penalties and restitution are distinct remedies with differing purposes, they argue the "Attorney General and the other law enforcement agencies appearing in this case are not obligated or statutorily authorized to allocate a lump sum judgment between restitution and civil penalties." The People claim they could have been accused of making an impermissible gift of public funds if they had allocated any sums to restitution. Conversely, had they allocated the sums to civil penalties, they "would be depriving consumers of restitution, a primary remedy sought in this action." They also claim to have faced additional strain from an appellate opinion issued while the offer was pending (but subsequently depublished) that indicated that the Attorney General's approval of a restitution award in a section 17200 action "created a res judicata bar precluding an action for restitution by affected private parties."

These arguments miss the mark. The People do not directly argue that they *could not* have accepted defendant's offer. There was nothing uncertain about the offer or defendant's proposed performance. Defendant offered the People $2 million. Defendant did not offer to make restitution directly to any purchaser of annuities. Defendant did not offer to allow any injunction to be issued. Had judgment been entered on the 998 offer, it would have been deemed a compromise settlement. (§ 998, subd. (f).) The People's professed uncertainty about what to do with the money is not the type of uncertainty that invalidates a section 998 offer.

Like any other litigant the People could be expected to weigh the value of cash in hand against the uncertain future prospects for obtaining the relief they sought. Any dilemma the People faced cannot be attributed to uncertainty in the offer itself, or affect the validity of defendant's offer to buy its peace in traditional fashion.

D. *"Reasonable Rejection" of Defendant's Offer.*

The People argue the trial court abused its discretion in awarding expert witness fees, because they reasonably rejected defendant's offer based on their belief in the strength of the case, as bolstered by the trial court's denial of defendant's motion for summary judgment while the section 998 offer was still pending. We disagree.

There is no judicially created reasonable rejection exception to the operation of section 998. "The purpose of section 998 is to 'encourage

settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' [Citation.]" (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 330 [86 Cal.Rptr.2d 398].) The question is whether the party rejecting the offer obtained a more favorable result, not whether it was reasonable in deciding to proceed to trial. The purpose of encouraging settlements, by imposing a strong financial disincentive on a party that fails to obtain a more favorable result at trial, would be substantially undercut if a party could avoid application of the statute as long as it could convince a trial court that its refusal to accept a settlement offer was reasonable.

The pertinent case law limitation on the operation of section 998 is simply that the offer be made in good faith: "To effectuate the purpose of the statute, a section 998 offer must be made in good faith to be valid. [Citation.] Good faith requires that the pretrial offer of settlement be 'realistically reasonable under the circumstances of the particular case. Normally, therefore, a token or nominal offer will not satisfy this good faith requirement . . . .' [Citation.] The offer 'must carry with it some reasonable prospect of acceptance. [Citation.]' [Citation.] One having no expectation that his or her offer will be accepted will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering large expert witness fees. [Citation.]" (*Jones v. Dumrichob, supra,* 63 Cal.App.4th at pp. 1262-1263; see also *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th at p. 332.)

 In awarding defendant's expert witness fees as costs under section 998, the trial court impliedly determined that defendant's offer was realistically reasonable under the circumstances and was not a token or nominal offer. The record reveals no basis on which to find the trial court abused its discretion. The offer was $2 million. The trial court later found defendant had no liability. "We are not obliged to ignore the reality that respondent prevailed at trial. In fact, the trial result itself constitutes prima facie evidence that the offer was reasonable, and the burden of proving an abuse of discretion is on appellants, as offerees, to prove otherwise. [Citation.]" (*Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1264.)

The People cannot carry that burden by pointing to their success against the *other* defendant, or their ability to defeat defendant's motion for summary judgment made while the section 998 offer was pending. There may have been a possibility the People would obtain an order requiring defendant

to make restitution and/or pay civil penalties far in excess of the amount of defendant's $2 million offer, but that substantial sum cannot be equated with the token or nominal offers with no reasonable prospect of acceptance discussed in the authorities cited by plaintiffs. (See, e.g., *Wear v. Calderon* (1981) 121 Cal.App.3d 818 [175 Cal.Rptr. 566]; *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53 [169 Cal.Rptr. 66]; *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692 [241 Cal.Rptr. 108].)

The reasoning of those fact-specific cases does not indicate that the trial court here abused its discretion in determining defendant's offer was made in good faith. For example, it was only in the context of a settlement offer of $1.00 (in the face of damages determined to exceed $18,000) that the court in *Wear v. Calderon, supra*, 121 Cal.App.3d 818 (*Wear*) stated: "A plaintiff may not reasonably be expected to accept a token or nominal offer from any defendant exposed to this magnitude of liability unless it is absolutely clear that no reasonable possibility exists that the defendant will be held liable. If that truly is the situation, then a plaintiff is likely to dismiss his action without any inducement whatsoever. But if there is some reasonable possibility, however slight, that a particular defendant will be held liable, there is practically no chance that a plaintiff will accept a token or nominal offer of settlement from that defendant in view of the current cost of preparing a case for trial." (*Id.* at p. 821, fn. omitted.)

*Wear* relied on *Pineda v. Los Angeles Turf Club, Inc., supra*, 112 Cal.App.3d 53 (*Pineda*), in which: "[B]oth the trial and appellate courts concluded that a settlement offer of $2,500 made by a defendant was so disproportionate to the plaintiff's demand of $10 million that it was not reasonable and that the offeror had no expectation that it would be accepted. [Citation.] From this circumstance the court concluded that the 'sole purpose of the offer was to make [defendant] eligible for the recovery of large expert witness fees at no real risk.' [Citation.]" (*Wear, supra*, 121 Cal.App.3d at pp. 821-822.)

In *Elrod v. Oregon Cummins Diesel, Inc., supra*, 195 Cal.App.3d 692 (*Elrod*), the appellate court found the trial court did not abuse its discretion in refusing to shift costs under section 998 where the defendant, subsequently found to be 10 percent liable for a paraplegic's injuries valued by the jury at nearly $1.2 million, had made an offer of $15,001. The court stated: "Section 998 should be interpreted so as to effectuate its purpose of encouraging the settlement of lawsuits before trial. [Citation.] Section 998 achieves its aim by punishing a party who fails to accept a reasonable offer from the other party. [Citations.] An offeree cannot be expected to accept an

unreasonable offer. Hence, any subsequent punishment of the offeree for nonacceptance does not further the purpose of section 998, because the offeree would not have acted differently at the time of the offer despite the threat of later punishment. In these circumstances, later punishment of the offeree merely provides a windfall to the offeror and does not encourage settlements." (195 Cal.App.3d at pp. 698-699, italics omitted.)

As recognized by the court in *Culbertson v. R. D. Werner Co., Inc.* (*Culbertson*): "The operative phrases to be taken from the *Pineda* and *Wear* cases are, 'under the circumstances of this case,' [citation], and 'realistically reasonable under the circumstances of the particular case' [citation]." (*Culbertson*, 190 Cal.App.3d at p. 710.) Defendant's $2 million offer in this case is not in any way similar to the offer of $1 in *Wear*. And here, as distinguished from *Elrod* and *Pineda*, the question is not whether the trial court abused its discretion in *refusing* to award costs under section 998, but whether it abused its discretion in *awarding* them.

In *Culbertson*, the appellate court found that a trial court had not abused its discretion in awarding costs under section 998 despite the fact that the defendant had offered only $5,000 in the face of a $1.5 million demand: "Plaintiff has not met his burden of convincing this court that the trial judge exercised his discretion in an arbitrary, capricious or patently absurd manner. [¶] . . . Neither [*Pineda* nor *Wear*] holds that the amount of demand by plaintiff, by itself, is indicative of whether defendant's compromise offer is 'realistically reasonable,' in 'good faith,' 'token' or 'nominal.' It is only one of the many factors to be taken into consideration by the trial judge in making his decision. *To hold otherwise could force a liability-free defendant to pay for damages not of his doing.* [¶] *When a defendant perceives himself to be fault free and has concluded that he has a very significant likelihood of prevailing at trial, it is consistent with the legislative purpose of section 998 for the defendant to make a modest settlement offer.* If the offer is refused, it is also consistent with the legislative intent for the defendant to engage the services of experts to assist him in establishing that he is not liable to the plaintiff. It is also consistent with the legislative purpose under such circumstances to require the plaintiff to reimburse the defendant for the costs thus incurred. It is clear that the Legislature adopted the statute to encourage early settlement of lawsuits to avoid the time delay and economic waste of trial, and to reduce the number of meritless lawsuits by requiring the losing party to pay the costs incurred by the prevailing party." (*Culbertson, supra,* 190 Cal.App.3d at pp. 710-711, fns. omitted, italics added.)

While it is theoretically possible that an offer of $2 million in a given case could constitute a "token" with no real possibility of acceptance, the People

have not sustained their burden on appeal to demonstrate that the trial court abused its discretion in determining that the substantial sum offered *in this case* was neither a token nor an offer with no reasonable prospect of acceptance.

E. *Proper Amount of Expert Witness Fees.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The judgment is affirmed. Costs to respondent.

Boren, P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 2001.

---

*See footnote, *ante,* page 1260.