[No. G033761. Fourth Dist., Div. Three. Mar. 21, 2005.]

MARINA ARIAS, Plaintiff and Respondent, v.
KATELLA TOWNHOUSE HOMEOWNERS ASSOCIATION, INC.,
Defendant and Appellant.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

**COUNSEL**

Lewis, Brisbois, Bisgaard & Smith, Arthur J. Travieso and James C. Nguyen for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Strom & Associates and Robb M. Strom as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**FYBEL, J.—**

### INTRODUCTION

■ We affirm the trial court's postjudgment orders awarding attorney fees and costs to plaintiff Marina Arias, the prevailing party. Arias is entitled to attorney fees by contract and statute. She is also entitled to costs by virtue of Code of Civil Procedure section 998. (All further statutory references are to the Code of Civil Procedure unless otherwise specified.) We agree with the Court of Appeal in *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 335 [86 Cal.Rptr.2d 398], that voluntary payments made by the defendant after a section 998 offer expires are considered part of the plaintiff's judgment.

### STATEMENT OF FACTS

Marina Arias owns a condominium unit in a complex known as the Katella Townhouse Project. The Katella Townhouse Homeowners Association, Inc.

(the Association), manages, operates, controls, and has the duty to repair the common areas of the Katella Townhouse Project.

In her complaint, Arias alleged the Association failed to maintain and repair the common areas of the Katella Townhouse Project, causing toxic mold to develop in and around Arias's unit. Arias therefore sued the Association for negligence, breach of contract, and declaratory relief.

On August 27, 2003, the Association served on Arias an offer to compromise pursuant to section 998. The Association offered to settle Arias's lawsuit for $50,001, in exchange for a full written release of all claims and a complete dismissal of the lawsuit with prejudice. The Association's offer also provided, "[e]ach side to bear its own costs and attorney's fees." Arias did not accept the Association's offer, and it expired by its own terms.

On December 8, 2003, Arias and the Association, through their counsel, executed a stipulation of facts which was read to the jury. In the stipulation, the Association admitted it breached its contract with Arias—the declaration of covenants, conditions and restrictions (CC&R's)—and also breached a duty owed to Arias under Civil Code section 1364, subdivision (a), and the common law, by failing to maintain the common areas of the Katella Townhouse Project, and failing to repair damage to Arias's unit caused by common area sources. The Association also stipulated it had paid or agreed to pay Arias for her property damage: "The Association has agreed to pay for the cost of alternate housing for Ms. Arias for a period not to exceed 4 months, and delivered to Ms. Arias on November 14, 2003 a check in the amount of $1,990.00 for the first month's rent, and a check in the amount of $750.00 for a refundable security deposit. [¶] . . . The Association has agreed to pay the estimate of $30,349.00 to clean, store and return Ms. Arias' personal property, and on November 24, 2003, delivered a check in the amount of $17,349.00 to Ms. Arias as partial payment. [¶] . . . The Association has agreed to pay the costs of investigation and mold testing in the amount [of] $3,266.81. [¶] The Association has agreed to pay the estimated cost of $49,353.95 to repair Ms. Arias' condominium unit, which repairs will include the remediation of mold, removing and replacing affected drywall, repainting the unit, and removing and [replacing] carpet and vinyl flooring."

The Association also stipulated that, to resolve and eliminate the need for trial on the cause of action for declaratory relief, it would specifically perform its duties under Civil Code section 1364, subdivision (a), and the CC&R's to repair the common areas of the Katella Townhouse Project impacting Arias's unit, as well as repairing Arias's unit. The Association further stipulated that in lieu of performing the repairs on Arias's unit itself, it could deliver a check

in the amount of $49,353.95 to counsel for Arias and permit Arias to complete the repairs herself. The Association did, in fact, pay Arias to perform the repairs.

The case was then tried to a jury on the causes of action for breach of contract and negligence. The jury awarded Arias $3,900 for past economic loss, and $2,500 for future economic loss; the jury awarded Arias nothing for noneconomic losses. Judgment was entered January 22, 2004.

The parties then filed dueling motions for attorney fees, and motions to tax costs. The trial court denied the Association's motion for attorney fees and its motion to tax costs, and granted Arias's motion for attorney fees in the amount of $98,777.50. The trial court's minute order reads, in relevant part, "Arias is the 'prevailing party' within the meaning of (1) [Civil Code section] 1717[, subdivision] (a) on the second cause of action, (2) [Civil Code section] 1354[, subdivision] (f) on the third cause of action, and (3) [section] 1032[, subdivision] (b) on the second and third causes of action. These claims were resolved in favor of Arias, despite the fact that the jury award was less than she sought. [¶] Arias did 'obtain a more favorable judgment' than the $50,001 offered by [the Association] under [section] 998 (which offer was reasonable under the circumstances of the case). I have not considered Arias' pre-offer costs or attorney's fees because that offer provided each party was to bear their own costs and fees. [Citation.] However, I have considered [the Association]'s pre-judgment payments in the amount of $88,939.75. [Citation.]" The trial court awarded Arias $30,000 less in attorney fees than she sought, concluding the $128,777.50 sought was unreasonable. The trial court later granted Arias's motion to tax costs, in light of the earlier ruling.

Arias filed a notice of appeal on March 26, 2004. The Association filed a notice of cross-appeal on April 9. Arias's appeal was dismissed for failure to pay the statutory filing fee. Arias's trial counsel (Strom & Associates) applied for leave to file an appellate brief as amicus curiae on behalf of Arias in connection with the Association's appeal. This court granted that application.

Discussion

I.

Entitlement to Attorney Fees and Costs

A. *Standard of Review*

The trial court concluded Arias was the prevailing party and awarded her attorney fees and costs. "Except as otherwise expressly provided by

statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not . . . ." (§ 1032, subd. (a)(4).) A trial court's determination that one party in litigation was the prevailing party is reviewed for abuse of discretion. (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94 [14 Cal.Rptr.3d 67, 90 P.3d 1223].)

### B. *Contractual Entitlement to Fees*

■ Attorney fees are allowable as an item of costs when authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10).) The prevailing party in this case was entitled to recover attorney fees based on both contract and statute. "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).) The CC&R's permit recovery of attorney fees by the prevailing party in any action to enforce their provisions. "In the event action is instituted to enforce any of the provisions contained in the Declaration, the party prevailing in such action shall be entitled to recover from the other party thereto as part of the judgment, reasonable attorney's fees and costs of such suit."

Arias's claims against the Association alleged the breach of the CC&R's and sought the enforcement of the provisions requiring the Association to maintain the common areas and to repair the damage to Arias's unit caused by the failure to maintain those common areas. The trial court correctly determined Arias was the prevailing party and was entitled to recover attorney fees under the CC&R's.

### C. *Statutory Entitlement to Fees*

The Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.) provides a statutory right to recover attorney fees in cases such as this one. "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (Civ. Code, § 1354,

subd. (c).)[1] The CC&R's for the Katella Townhouse Project fall within the definition of governing documents. (Civ. Code, §§ 1351, subds. (h) & (j), 1353, subd. (a)(1).) Arias's complaint sought enforcement of the CC&R's with regard to the Association's duty to maintain the common areas and to repair the damage to Arias's unit caused by the failure to maintain the common areas. The trial court correctly determined Arias was the prevailing party and was entitled to recover attorney fees under Civil Code section 1354, subdivision (c).

## II.

### SECTION 998

■ If properly used, an offer made under section 998 can shift the right to recover some costs from the prevailing party. "The purpose of section 998 is to 'encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' [Citation.]" (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th at p. 330.)

In this case, the applicable portion of section 998 is the following: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment . . . , the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial . . . , or during trial . . . , of the case by the defendant." (§ 998, subd. (c)(1).) Here, Arias did not accept the Association's $50,001 offer. (The trial court concluded the offer was reasonable, a finding not challenged on appeal.) If Arias had not obtained a more favorable judgment, she would not be entitled to recover her postoffer costs, and would be required to pay the Association's postoffer costs.

■ The trial court concluded that Arias obtained a more favorable judgment than the Association's $50,001 offer by adding the Association's

---

[1] The parties and the trial court relied on Civil Code section 1354, subdivision (f). That statute was amended in 2004. The Law Revision Commission comments state, "The first sentence of former subdivision (f) is continued without substantive change in subdivision (c)." (Cal. Law Revision Com. com., 8 West's Ann. Civ. Code (2005 supp.) foll. § 1354, p. 94.) Therefore, the parties' arguments regarding applicability of this section are not affected by the redesignation of the subdivisions in Civil Code section 1354.

postoffer payments in the amount of $88,939.75[2] to the jury verdict of $6,400. We review this determination for abuse of discretion. (*People ex rel. Lockyer v. Fremont General Corp.* (2001) 89 Cal.App.4th 1260, 1265 [108 Cal.Rptr.2d 127].)

█ In *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th at page 335, the appellate court concluded the defendant's postoffer payment must be added to the jury's award to determine whether the plaintiff obtained a more favorable judgment than the amount of the defendant's section 998 offer. We agree with the court's conclusion and analysis. In that case, the plaintiff sued a general contractor with whom it had contracted to provide lumber, and the surety that had issued a payment bond guaranteeing the contractor's payments, seeking $122,205.24 in damages. (73 Cal.App.4th at p. 328.) The defendants jointly offered $62,690, including attorney fees and costs, under section 998. (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* at p. 328.) The plaintiff did not accept the offer. (*Ibid.*) After the offer expired, the contractor sent the plaintiff a check for $62,690. (*Ibid.*) At trial, the jury, which had been informed of the contractor's payment, awarded the plaintiff $13,205.85 in damages. (*Id.* at p. 329.) The trial court determined the plaintiff's total recovery, including the jury's verdict and the postoffer payment by the contractor, was more favorable than the section 998 offer. (*Ibid.*)

The Court of Appeal affirmed. "[The surety] contends that the $62,690 payment should be excluded because it was made *after* the offer to compromise. For that contention, [the surety] relies on the general rule that a plaintiff's postoffer costs are not considered in determining whether a more favorable judgment has been obtained. [Citation.] But the general rule must be applied in accordance with its purpose: '[W]here the plaintiff refuses an offer of compromise by the defendant, costs incurred by the plaintiff before the time of the offer are added to the award of damages for purposes of determining whether the judgment is "more favorable" than the offer, but costs incurred after the offer are excluded from the calculation. . . . The rationale for this rule is that allowing the addition of postoffer costs would defeat the purpose of [section] 998[, subdivision] (c) . . . [by] enabl[ing] the plaintiff to increase the amount of the "judgment" simply by driving up postoffer costs.' [Citations.] [¶] Plainly, our conclusion that a defendant's postoffer contract payment should be considered in determining a plaintiff's success does not permit a plaintiff to inflate the judgment through postoffer

---

[2] The postoffer payments from the Association to Arias were detailed in the declaration of Robb M. Strom, attached to the reply memorandum in support of Arias's motion for recovery of attorney fees. Those payments were (1) $30,349 for moving and cleaning Arias's personal property, (2) $5,970 for Arias's alternate living arrangements, and (3) $52,620.75 for mold testing and damage to Arias's condominium.

conduct. On the contrary, our decision ensures that a defendant's offer to compromise will remain 'realistically reasonable under the circumstances of the particular case.' [Citation.]" (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th at p. 336, fn. omitted.)

The appellate court also explained an important policy reason underlying its decision. "[The surety]'s argument, if carried to its logical conclusion, would produce results more absurd than the one here. The payor under a contract could simply withhold payment in hopes that the payee will go away. If the payee files suit, the payor could promptly make a section 998 offer that covers a substantial portion of the debt but which would not be accepted, e.g., $50,000 on a claim of $100,000. Then, on the eve of trial, the payor could unilaterally send the payee a check for $75,000. At trial, the payee would recover $25,000. Thereafter, in ruling on posttrial motions, the trial court would find that the payee did not obtain a 'judgment' more favorable than the offer to compromise. As a result, the payee, despite its status as the prevailing party, would be entitled to recover only its filing fee and the cost of service of process. The payor, on the other hand, would be entitled to recover all of its costs, including attorneys' fees if the contract so provided. Under this scenario, the payee could celebrate a pyrrhic victory. [¶] In contrast, our interpretation of section 998 ' ". . . comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid[s] an interpretation that would lead to absurd consequences." ' [Citation.]" (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th at p. 335, fn. omitted.)

The cost-shifting provisions of section 998 do not apply here because Arias obtained a more favorable judgment than the amount of the Association's offer. The jury's verdict of $6,400, when added to the Association's postoffer payments in the amount of $88,939.75, exceeds the Association's $50,001 offer. Indeed, this case presents a stronger case than *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th 324, 329, where the postoffer payments were not made a part of the judgment; here, they were.

The Association argues *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th 324, does not apply because that case involved an action on a contract regarding the payment of goods, and did not involve any claims for injunctive relief. Nothing in *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* or section 998 supports such a distinction. When a section 998 offer includes a nonmonetary component, the offer must be evaluated in light of all the terms and conditions attached to it, not just the monetary component, in order to determine whether the plaintiff has received a more favorable judgment. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 800–803 [101 Cal.Rptr.2d 167] [confidentiality condition in section 998

offer in defamation case cannot be valued, and makes the offer invalid for purpose of shifting costs].) When the reverse is true, i.e., the offer contains only a monetary offer but the relief recovered is both monetary and nonmonetary, the trial court must also consider the offer in light of the totality of the recovery. Here, Arias recovered $88,939.75 as well as the Association's agreement to perform its obligations under the CC&R's and the Civil Code.

■ At oral argument, the Association's counsel argued the trial court improperly put a monetary value on the injunctive relief obtained by Arias. We disagree. Section 1032, subdivision (a)(4) specifically permits the trial court to determine who is the prevailing party when "any party recovers other than monetary relief." Here, the trial court did not abuse its discretion in doing so, since the parties' own stipulation estimated the value of the injunctive relief. The trial court did not abuse its discretion in determining Arias's total recovery exceeded the Association's offer.

The Association also argues a party who rejects a section 998 offer should not be permitted to inflate the judgment through its postoffer conduct, citing *Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co., supra,* 73 Cal.App.4th 324, 336. But, here, it was the Association's conduct, not Arias's, that increased the total amount of the judgment. This exemplifies the difference between postoffer costs, which could be unilaterally increased by a party to manipulate the amount of the judgment upward, and postoffer payments by a party.

The Association's admission it had breached its contractual, statutory and common law duties, and had paid or had agreed to pay Arias for her property damage was read to the jury. The jury was instructed, "[y]ou must accept these facts and issues as true in arriving at your conclusions and verdict in this case." To refuse to consider the Association's postoffer payments as part of Arias's total recovery would result in an inequity, because Arias could not have recovered the property damage payments as a part of the jury's verdict.

The Association also argues the trial court should have awarded the Association its postoffer attorney fees and costs, and its expert costs, because Arias did not obtain a more favorable judgment than the Association's offer. Because we have concluded the trial court correctly determined Arias obtained a more favorable judgment than the Association's offer, we need not address this argument.

Finally, at oral argument, the Association's counsel contended the amount of attorney fees awarded was unreasonable. Counsel stated that this argument was raised in section V, part 3 of the Association's opening brief on appeal. But that brief limits its argument on the amount of attorney fees to the

contention it would be inequitable to award attorney fees grossly out of proportion to Arias's jury verdict. In making this argument, the Association again fails to consider its postoffer payments. When those payments are considered, the total recovery by Arias is roughly equivalent to the amount awarded in attorney fees.

## DISPOSITION

The postjudgment orders are affirmed. In view of the nonappearance of Arias in this appeal, neither party shall recover costs on appeal.

Rylaarsdam, Acting P. J., and Moore, J., concurred.