2006 OK CIV APP 36

**ALLEN FARMS, INC., a corporation, Plaintiff/Appellee,**

v.

**BROCE CONSTRUCTION COMPANY, INC., a corporation, and St. Paul Seaboard Surety Company, a corporation, Defendants/Appellants.**

No. 100,522.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 21, 2005.

Maurice G. Woods, II, McAtee & Woods, P.C., Oklahoma City, OK, for Appellants.

John M. Nelson, Park, Nelson, Caywood, Jones, Chickasha, OK, for Appellee.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Defendants/Appellants Broce Construction Company, Inc., a corporation, and St. Paul Seaboard Surety Company, a corporation (collectively, Broce or Defendants) seek review of the trial court's orders granting judgment and attorney's fees to Plaintiff/Appellee Allen Farms, Inc., (Allen) in Allen's action to recover an unpaid sum due for materials furnished. In this proceeding, Defendants challenge the trial court's judgment for Allen as contrary to the governing contract and unsupported by the evidence, and the trial court's post-judgment denial of its prayer for attorney's fees as contrary to law. Having reviewed the record, however, we discern no errors of law or fact. The orders of the trial court are therefore affirmed.

¶ 2 Broce contracted with the Oklahoma Turnpike Authority (OTA) to construct slightly more than four miles of highway in McClain County. Pursuant to construction plan specifications, the contract required Broce to install solid slab grass sod to a width of ten feet along each side of the highway (over 61,000 square yards), and Broce subcontracted with Allen to provide and install the sod at $1.35 per square yard.

¶ 3 As it turned out, however, the project required substantially more sod than specified, apparently due to an error in the plan specifications by Triad Design Group, OTA's project design engineers, and, by letter amendments to the prime contract, OTA approved installation of sod in excess of that called for by the plans. At the express direction of Broce, Allen consequently delivered and installed over 190,000 square yards of sod, some of which for the replacement of existing sod destroyed by Broce, and for which, Broce bore the obligation to pay. A second subcontractor, Sioux Construction Company, laid over 43,500 square yards.

¶ 4 Sioux Construction submitted an invoice to Broce, seeking payment of $58,752.00 for sod, and $6,900.00 for fencing installed at Broce's direction. Allen submitted an invoice requesting payment of about $256,687.00 [1] for 190,140 square yards of sod delivered and installed.

¶ 5 Allen and Broce subsequently met to draft a "spreadsheet" delineating the quantity of sod installed according to the project's benchmarks,[2] and Allen then estimated over 215,000 square yards of sod had been laid by it and Sioux Construction. However, Broce and Triad subsequently reduced the amount to be claimed to slightly over 185,000 square yards, apparently without Allen's input.

¶ 6 After negotiation of the final payment, OTA paid Broce for 185,373.67 square yards of sod a sum of $250,254.45. Broce paid Sioux Construction $48,841.19 in settlement of its invoice. Broce paid Allen a total of $148,816.87,[3] leaving an alleged balance due to Allen of $107,870.13.

¶ 7 When Broce refused to pay more, Allen commenced the instant suit to collect in 2002. In December 2003, Broce offered to confess judgment in the sum of $76,122.71. Allen neither responded to the offer, nor made a counter-offer. In January 2004, a month before trial, Broce tendered a payment to Allen of $68,254.58, leaving an alleged balance due of $37,048.68, recovery of which Allen sought at non-jury trial in February 2004.

¶ 8 At the non-jury trial, Broce admitted it bore liability for slightly more than $25,-500.00 [4] in sod to replace existing sod destroyed. Broce presented evidence to show that its subcontract with Allen limited the amount payable for sod to the amount approved for payment by OTA pursuant to the prime contract as amended. Broce also presented evidence to show that it had negotiated the final payment from OTA according to the spreadsheet figures prepared with Allen's input, and that its combined payments to Allen and Sioux Construction exceeded the sum paid by OTA for sod.

¶ 9 Allen presented evidence to show that Broce was liable to pay for all sod delivered and installed, both because Broce expressly authorized the installation of all sod delivered, and because Broce bore liability for the replacement of the existing sod in place which it destroyed during performance of the prime contract. Allen also presented evidence showing: Broce did not present OTA an accurate statement of all sums invoiced by Allen for sod provided at the time of the negotiation of the final project payment; Broce did not afford Allen an opportunity to present an accurate statement of the sod it delivered and installed during the negotiation of the final payment with OTA; OTA paid for substantially more sod than called for by the plan specifications; and, that Broce paid only $15,650.00 out of pocket for the existing sod destroyed during construction.

¶ 10 On consideration of the testimony and evidence, the trial court held for Allen, and awarded the claimed balance due of $37,048.68 with interest. Allen filed a post-judgment motion to assess attorney's fees and costs as the prevailing party on the

1. Reduced to $254,120.13 by the one percent (1%) bond requirement of the prime contract and Allen's subcontract.

2. According to Broce, OTA would only pay for sod based on quantities measured in the field, determined as a function of the width of sod laid and the distance between project "stations."

3. In two payments, one for $30,986.87, and one for $117,830.00.

4. Almost 19,000 square yards at the contract unit price of $1.35 per square yard.

contract claim under 12 O.S. § 936. Broce filed a post-judgment motion to assess attorney's fees and costs pursuant to 12 O.S. § 1101.1, asserting Allen's recovery of less than the pre-trial offer to confess. The trial court found § 1101.1 inapplicable, denied attorney's fees to Broce, and granted costs and attorney's fees to Allen in the sum of $26,230.31.

## Standard of Review

¶ 11 We review the trial court's rulings on questions of law de novo, without deference to the lower court's legal conclusions. *See, e.g., Fanning v. Brown,* 2004 OK 7, 85 P.3d 841; *K & H Well Service, Inc. v. Tcina, Inc.,* 2002 OK 62, 51 P.3d 1219. In cases tried to the bench without a jury, we review the record to determine whether competent evidence supports the trial court's findings of fact, and if we find competent evidence to support the trial court's order, we must affirm. *K & H Well Service, Inc.,* 2002 OK 62, ¶ 9, 51 P.3d at 1230.

## Evidentiary Challenges

¶ 12 In its second proposition, Broce challenges the trial court's judgment to Allen as contrary to the evidence, particularly complaining the trial court erred in calculating its out-of-pocket sod expense as less than its admitted liability, and erroneously imposed liability on it for sod in excess of the 10–foot width requirement imposed by OTA. In its third proposition, Broce complains the trial court's judgment runs contrary to its contract with Allen, limiting the amount payable to the amount approved for payment by OTA.[5] Allen responds, asserting the evidence showed that it delivered and installed all invoiced sod at the specific direction of Broce and/or its agents, and that Broce bears liability for all sod delivered and installed pursuant to an executed oral modification of the parties' contract.

¶ 13 "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." 15 O.S. § 237. "[T]he subsequent 'executed oral agreement' referred to in § 237, supra, must be established by 'positive, clear and convincing' proof." *Dewberry v. Universal C.I.T. Credit Corp.,* 1966 OK 77, ¶ 9, 415 P.2d 978, 979. (Citations omitted.) "When parties orally agree to an alteration of a contract, and such contract, as amended, is fully carried out, this constitutes, as to such amended matters, an executed contract." *Kenison v. Baldwin,* 1960 OK 93, ¶ 0(1), 351 P.2d 307.

¶ 14 In the present case, OTA agreed to pay for sod in excess of the 61,000 square yards specified by the construction plans early in the project, and OTA ultimately paid for over 185,000 square yards. Broce conceded liability for some sod in excess of that approved for payment by OTA. Allen presented evidence that it delivered and installed the invoiced amount of sod at the specific direction of Broce's on-site agent, and Broce's obligation to pay for all volumes delivered and installed at its express direction is implicit. The evidence supports a conclusion that Allen fully performed its part of a modified contract to provide and install sod in excess of that called for by the construction plans without regard to the amount OTA might ultimately approve for payment.

¶ 15 In its fourth proposition, Broce argues the trial court erred in holding it had breached its implied duty to secure full payment for Allen from OTA. Here, Broce argues the evidence demonstrated it afforded Allen multiple opportunities to document the claimed quantities as OTA required prior to the negotiation of the final payment, but that Allen wholly failed and refused to submit documentation of all quantities claimed.

¶ 16 Allen responds, asserting the evidence demonstrated: OTA would not negotiate with subcontractors; after the pre-negotia-

---

5. Here, Broce asserts the parties expressly agreed in their contract that, "in settling for the amounts due hereunder, in all instances it shall be on the basis on the amount found due by [OTA] pursuant to the prime contract," and that, "[i]n the event of any controversy respecting the fulfillment of the terms and conditions of the Prime Contract plans and specifications, the decision of [OTA] shall be final and binding upon [Allen] as upon [Broce] under the terms and conditions set out in the Prime Contract."

tion meeting with Broce, it was afforded no opportunity to either participate in Broce's measurement of the sodded areas prior to negotiation with OTA, or to present a true statement of the sod it actually delivered and installed during the negotiations with OTA; Broce did not request payment from OTA for the volume actually provided by Allen; and Broce's acceptance of the final payment from OTA foreclosed any right Allen may have had to secure payment of the balance due. So, says Allen, because the law required Broce to act reasonably in pursuit of the actual sum due, and the evidence arguably demonstrated Broce did not, the trial court did not err in concluding that Broce breached its implied duty to accurately state and seek payment for the actual total volume of sod Allen delivered and installed.

¶ 17 "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom." 15 O.S. § 172. "In addition, '[t]he common law imposes [an] implied covenant upon all contracting parties, that [no] party, because of the purposes of the contract, will act to injure the [other] parties' reasonable expectations nor impair the rights or interests ... to receive the benefits flowing from their contractual relationship." *State of Oklahoma v. Pyles,* 2002 OK CIV APP 91, ¶ 9, 55 P.3d 473, 475. (Citations omitted.)

¶ 18 We have previously recognized evidence demonstrating both Broce's concession of liability for at least a portion of the sod overrun to replace the existing sod destroyed during construction, and an executed oral agreement between Broce and Allen to deliver and install more sod than specified by the construction plans. Allen's payment for all sod it delivered and installed in excess of the plan specifications depended on Broce's accurate report of the invoiced volume of sod to OTA. The evidence supports a conclusion that Broce's failure in this respect deprived Allen of full payment for its performance of the modified-and-executed oral agreement.

## Attorney's Fees

¶ 19 In its first proposition, Broce challenges the trial court's post-judgment

award of attorney's fees to Allen, and denial of an award to it. In this proposition, Broce asserts that, because Allen ultimately recovered less than the pre-trial offer at trial, it is entitled to an award of attorney's fees under 12 O.S. § 1101.1(B)(3). So, says Broce, the trial court erred in denying it an award of attorney's fees, at the very minimum, to offset the award of prevailing party attorney's fees to Allen.

¶ 20 Allen responds, arguing that he received less than the pre-trial offer to confess only because Broce paid a portion of the sum due before trial, and because it consequently sought recovery of only the reduced balance due at trial. So, says Allen, the trial court correctly held § 1101.1 did not apply.

¶ 21 Section 1101.1(B) provides in pertinent part:

1. After a civil action is brought for the recovery of money or property in an action other than for personal injury, wrongful death or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action....

....

3. If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after the date of the first offer of judgment which is greater than the judgment until the date of the judgment. Such costs and fees may be offset from the judgment entered against the offering defendant.

12 O.S. § 1101.1(B)(1), (3). The purpose of this section "is to encourage judgments without protracted litigation"[:] the cost- and fee-shifting provisions furnish "additional incentives to encourage a plaintiff to accept a defendant's offer to confess judgment," and

"[a] defendant ... is encouraged by the statute to offer an early confession of judgment [in order to] avoid further increases in costs which may be incurred to [sic] trial preparation." *Dulan v. Johnston,* 1984 OK 44, ¶ 10, 687 P.2d 1045, 1047; *Gaston v. Tillery,* 1995 OK CIV APP 82, ¶ 4, 900 P.2d 1012, 1013; *Hernandez v. United Supermarkets of Oklahoma, Inc.,* 1994 OK CIV APP 122, ¶ 6, 882 P.2d 84, 87. When determining whether the defendant's pre-trial offer to confess exceeds plaintiff's recovery, the amount of the offer is generally compared to plaintiff's "judgment," which includes pre-judgment interest. *Lawson v. National Steel Erectors Corp.,* 2000 OK CIV APP 69, ¶¶ 37–38, 8 P.3d 171, 179; *Bohnefeld v. Haney,* 1996 OK CIV APP 141, ¶ 9, 931 P.2d 90, 91.

¶ 22 However, the parties cite, and we find, no Oklahoma authority on point with the facts of this case. Where the issue has arisen, at least one court has held that, under that state's cost-shifting statute similar to Oklahoma's, the amount of post-offer, pre-trial payments must be considered in determining whether the pre-trial offer to confess exceeded recovery. *Mesa Forest Products, Inc. v. St. Paul Mercury Insurance Company,* 73 Cal.App.4th 324, 86 Cal.Rptr.2d 398 (Cal.App.1999). The court there reasoned that, to hold otherwise would frustrate the cost-shifting provisions of the California statutory regime, contrary to the legislative intent to encourage acceptance of reasonable pre-trial offers to settle:

> .... The payor under a contract could simply withhold payment in hopes that the payee will go away. If the payee files suit, the payor could promptly make a [pretrial] offer [to compromise] that covers a substantial portion of the debt but which would not be accepted, e.g., $50,000 on a claim of $100,000. Then, on the eve of trial, the payor could unilaterally send the payee a check for $75,000. At trial, the payee would recover $25,000. Thereafter, in ruling on posttrial motions, the trial court would find that the payee did not obtain a "judgment" more favorable than the offer to compromise. As a result, the payee, despite its status as the prevailing party, would be entitled to recover only its filing fee and the cost of service of process.

> The payor, on the other hand, would be entitled to recover all of its costs, including attorneys' fees.... Under this scenario, the payee could celebrate a pyrrhic victory.

*Mesa Forest Products, Inc.,* 73 Cal.App.4th at 335, 86 Cal.Rptr.2d at 404. The California appellate court consequently held "the trial court properly included the postoffer payment ... in deciding whether the judgment was more favorable than [the] offer to compromise." *Id.*

¶ 23 There can be no doubt this is the correct rule to be applied in making the § 1101.1 determination of whether the pre-trial offer exceeds recovery, for to hold otherwise could result in the absurdity described by the California court. We consequently hold that where defendant makes a pre-trial offer to confess, and, before trial, makes a partial payment of sums allegedly due, the amount of the partial payment should be added to the ultimate judgment rendered to the plaintiff in order to determine whether the pre-trial offer exceeds the plaintiff's recovery as to trigger the fee- and cost-shifting provisions of § 1101.1.

¶ 24 In the instant case, Allen recovered $68,254.58 in pre-trial payments and a judgment of $37,048.68 with interest, for a total recovery of the exact sum it sought of $107,870.13 with interest, a sum far exceeding Broce's pre-trial offer to confess of $76,122.71. We therefore conclude the trial court did not err in rejecting Broce's postjudgment prayer for § 1101.1 attorney's fees and costs.

### Conclusion

¶ 25 We find competent evidence to support the trial court's order granting judgment to Allen. We discern no legal error by the trial court in denying § 1101.1 attorney's fees to Broce. The orders of the trial court granting judgment to Allen, and denying attorney's fees and costs to Broce, are therefore AFFIRMED.

BUETTNER, C.J., and HANSEN, J., concur.