Filed 8/28/20  Puzo v. Kromolowski CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DOROTHY PUZO,<br><br>　　Plaintiff, Cross-defendant and Respondent,<br><br>　　v.<br><br>JERZY J. KROMOLOWSKI et al.,<br><br>　　Defendants, Cross-complainants and Appellants. | B294569, B296204<br><br>(Los Angeles County Super. Ct. No. BC523129) |
| AHASVERUS, INC.,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>DOROTHY PUZO,<br><br>　　Defendant and Respondent. | (Los Angeles County Super. Ct. No. BC565293) |

APPEALS from a judgment of the Superior Court of Los Angeles County, H. Chester Horn Jr., Judge.  Affirmed.

Martin E. Jacobs for Defendants, Cross-complainants and Appellants, and Plaintiff and Appellant.

Law Offices of Steven J. Horn and Steven J. Horn for Plaintiff, Cross-defendant and Respondent, and Defendant and Respondent.

_____

Respondent Dorothy Puzo loaned $30,000 to appellants Jerzy Kromolowski and Mary Olson-Kromolowski.  The debt is memorialized in a promissory note (Note) with a 2012 due date; appellants' transmittal letter refers to it as a "loan."  Puzo sued to recover the debt in 2013 when appellants refused to repay it.

Appellants cross-complained, claiming the Note represents an advance against profits that were to be generated by the sale of a screenplay they wrote with Puzo in 2007.  Puzo paid appellants' corporation $30,000 for the screenplay, apart from the $30,000 personal loan to appellants.  Appellants allege that Puzo did not market the screenplay, which was adapted from a novel, depriving them of compensation and profits.

The trial court entered judgment for Puzo on her complaint to enforce the Note, finding that the debt is clear and the Note must be enforced as written.  The court nonsuited appellants on their breach of contract claims, finding their damages are purely speculative absent proof that the owner of the screen rights is willing to sell them.  We affirm.

2

# FACTS AND PROCEDURAL HISTORY
## *The Adaptation of Fools Die*

Respondent is the daughter of Mario Puzo, author of The Godfather.  Respondent has worked in the entertainment industry and belongs to the Directors Guild of America Appellants belong to the Writers Guild of America and have written over 22 screenplays, as a husband and wife team.  The parties have known each other since the 1970's.

In 2004, respondent called appellants to discuss a Mario Puzo novel called Fools Die.  She was writing an adaptation and asked appellants if they might like to work on it with her.  She offered them $25,000 to collaborate with her, plus "two-thirds of the back end on the screenplay."  The "back end" means "should our efforts [be] successful and someone paid additional funds for the screenplay, whatever we were paid, [appellants] would get two-thirds of it."  The parties did not discuss what respondent would do with the screenplay.

The parties signed a "Confidential Letter Agreement" dated October 25, 2004 (the Agreement).  It states that respondent will pay $30,000 to Ahasverus, appellants' loan-out corporation, for appellants' services.  The parties agreed to write an adaption of Fools Die over the course of two years and "Dorothy is to own and control the disposition of the finished screenplay."  Further, "at the discretion of Dorothy, the parties hereto agree to apply their best efforts to the creation of a feature length screenplay and thereafter to the subsequent production of same into a feature film."  If the screenplay sold, respondent would recoup her initial $30,000 investment and each party would receive one-third of any additional sums.

3

Appellants knew respondent did not own film rights to Fools Die and had only verbal approval from her family to write a screenplay. In 2006, respondent obtained from the Estate of Mario Puzo (Estate) a written option (Option) to purchase film rights to Fools Die. The Option did not entitle respondent to sell or assign the film rights without the express written consent of the Estate, nor does it specify a price for which the Estate would be willing to sell its rights. Appellants are not parties to the Option. They agree that while "anyone could write or have written a screenplay" of Fools Die, one must have a film rights agreement with the Estate "to sell it, assign it, produce it, or monetize it in any way."

After respondent obtained the Option, the parties worked on the screenplay, which was completed in 2007 and is registered with the Writers Guild. Appellants believe respondent was "so ecstatic about it" that she sent them a $5,000 bonus plus $1,000 to cover costs. Respondent disagrees, declaring that appellants "never delivered a completed screenplay which I had any interest in developing in any way, shape or form." She notified appellants of her disinterest. No film of Fools Die was made.

### Appellants' Breach of Contract Claim

Appellants pursued a cross-complaint when respondent sued to collect on the Note. They allege that respondent paid Ahasverus $30,000 under the Agreement. She also gave appellants $30,000 in "advances" while they were working on the screenplay for Fools Die. They signed the Note with the

4

understanding that the advances would be repaid by production of a film or sale of the screenplay.[1]

In December 2008, appellants entered a "blind script commitment" with Universal Pictures. Either the studio or appellants could propose a project that, "if mutually acceptable to both sides," would pay appellants for preparing a screenplay plus a box office bonus and profit participation. Appellants allegedly asked respondent if they could propose Fools Die to Universal but she refused. In 2009, multiple parties expressed interest in investing in a Fools Die project but respondent either refused to speak to the investors or was abusive and uncooperative if she did speak to them.

Appellants allege that respondent's behavior was a breach of her obligation to promote or sell the screenplay. They were damaged by not receiving writers' compensation; net profit participation; special award bonuses; residuals; foreign royalties; director's compensation; compensation for sale of the screenplay; and other miscellaneous damage.

### Summary Judgment Is Denied

Respondent moved for summary judgment on her complaint to collect on the Note and on appellants' cross-complaint. She argued that she had no duty to sell the screenplay, which she owns and controls. Appellants opposed the motion.

The court denied the motion. It found that triable issues exist regarding the scope of respondent's discretion under the Agreement, her duty to market the screenplay to develop it into a

---

[1] Ahasverus filed a complaint against Puzo mirroring the facts in appellants' cross-complaint. The lawsuits were consolidated before trial.

5

motion picture, the nature of the option she had with the Estate, and whether the $30,000 debt in the Note was an advance against profits from the screenplay.

### *The Motion in Limine and Nonsuit*

Respondent filed a motion in limine (MIL) "to exclude evidence suggesting, opining or speculating about the damages [the Kromolowskis] allegedly sustained due to a breach of the [Agreement] on the grounds that any such testimony is pure speculation." She requested an order precluding appellants and their expert "from testifying as to their damages because a foundation cannot be laid for an opinion that they have sustained any damages."

Respondent argued that appellants did not control the screenplay and the Estate never agreed to allow the screenplay to be made into a movie. Any testimony about money appellants would have made *if* they owned the screenplay and *if* it were ever made into a film is speculative and lacks foundation.

Appellants opposed the MIL, contending that it is an improper motion for summary judgment. They argued that they own the copyright to the screenplay with respondent, who failed to use her best efforts to get it produced. Testimony from appellants and their expert would be based on their expertise and "enable them to provide well-founded estimates." The Estate was supposed to work with respondent to enter good faith negotiations for an acquisition agreement for a feature length film.

After hearing argument, the court granted the MIL, saying, "Any decision about damages in this case requires the jury to speculate about a whole series of steps that would have been successfully completed and what people would have done.

Because it wasn't done.  That's the difficulty."  The court noted that "all the damage calculations require speculation as to the key element," i.e., whether a deal would ultimately have been concluded by the Estate.  The court concluded that appellants cannot "prove injury or damages."

When the court indicated that it would grant nonsuit, appellants requested a continuance to depose the Estate's executor, Anthony Puzo.  Respondent objected that appellants tried and failed to depose Anthony Puzo in 2014, then did nothing for four years, and it is too late to engage in discovery during trial.  The court asked appellants' counsel, "Did you announce ready for trial?" and "you chose to go forward?"  When counsel replied affirmatively, the court denied his request for a continuance.

### Trial on Respondent's Complaint

A bench trial was held to resolve respondent's breach of contract claim.  Respondent testified that she loaned appellants $30,000, as evidenced in the Note dated August 1, 2007.  It bore interest at a rate of 3 percent and was due on or before August 1, 2012.  Appellants did not tender the debt, even after respondent demanded payment.

Respondent testified that the loan evidenced in the Note is not the same $30,000 she paid Ahasverus for appellants' collaboration on the Fools Die screenplay.  Indeed, appellants' letter accompanying the Note states it "represents our obligation to repay you the $30,000 you have been generous enough to loan to us. . . . It is our intention and understanding that we will begin repayment as soon as our financial situation allows, but in any event not later than August 1, 2012."

Respondent wrote in October 2006 that appellants could "defer" $15,000 "to production cost instead of loan when things come to fruition." Based on respondent's message, Jerzy Kromolowski testified that the Note "was supposed to be repaid when the film would come to fruition," but admitted that the Note does not mention the film. Mary Kromolowski testified that the checks from respondent were "advances against future earnings" from the film project. She agreed to the Note to placate respondent's family and accountant. She admitted that neither the Note nor her letter transmitting the Note refer to the loan as an advance. Mrs. Kromolowski never imagined that the screenplay would not be sold to generate income to repay the loan or advances.

Respondent denied any mutual understanding that the Note would be repaid from proceeds of a film. In any event, the film did not come to fruition. She never told appellants that they did not have to repay the $30,000 loan.

The court found the 2007 Note is "clear by its terms" and cannot be contradicted by any inconsistent writings. Thus, "the Note is binding as written." The court entered judgment for respondent.

## DISCUSSION

### 1. Nonsuit Was Proper

Appellants argue that the court improperly used respondent's MIL as a springboard to dismiss their claims without affording them a trial, treating it as if it were a motion for summary judgment. We conclude that the ruling fell within the court's "inherent power to control litigation and conserve judicial resources." (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 284 [court granted defendant's MIL, then gave

8

judgment to the defendant because it would be useless to try the case]; see *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 28 [court's grant of a MIL "was tantamount to a nonsuit"]; *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 358–359.) Nonsuits are subject to de novo review. (*Lucas, supra,* at pp. 284–285.)

Appellants challenge the trial court's methodology. It is true that nonsuit generally follows presentation of plaintiff's case not, as here, before a jury is impaneled. (Code Civ. Proc., § 581c, subd. (a).)[2] Nevertheless, " 'we cannot reverse the judgment of dismissal based on . . . alleged [procedural] error . . . unless we are convinced that the ruling resulted in a miscarriage of justice . . . .' ([Citation]; see Cal. Const., art. VI, § 13.)" (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 952 [court granted defendant's MIL, then dismissed plaintiff's claim].)

We must assume, as alleged in the cross-complaint, that the parties agreed to apply their best efforts to create a screenplay; respondent was demanding and difficult during the project; and she did not cooperate with attempts to market the screenplay. The trial court ruled that appellants cannot prevail, regardless of respondent's behavior, because "there are no non-speculative damages."

The issue is whether appellants' experts could prove loss attributable to respondent's actions or inaction with credible evidence. Appellants contend that the facts and circumstances "compel a conclusion that expectation damages in this case were not speculative but were sufficient for a trier of fact to have

_____

[2] Undesignated statutory references in this opinion are to the Code of Civil Procedure.

concluded that the . . . breaches of contract by Dorothy Puzo caused expectation damages."

Courts have "a substantial 'gatekeeping' responsibility" to exclude unreliable expert testimony. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 769 (*Sargon*).) In *Sargon*, the trial court excluded "speculative" testimony. The Supreme Court agreed. "Lost profits need not be proven with mathematical precision, but they must also not be unduly speculative. Here, the court acted within its discretion when it excluded opinion testimony that [Sargon] would have become extraordinarily successful had the university completed the clinical testing." (*Id.* at p. 753.) Testimony cannot be based on assumptions of fact lacking evidentiary support. (*Id.* at p. 770.) We review the exclusion of testimony for an abuse of discretion. (*Id.* at p. 773.)

At the hearing on the MIL, appellants argued "there is no question but that [Estate executor] Anthony Puzo would have allowed" respondent's project to go forward. Anthony Puzo was not deposed or designated as a trial witness. Under the Option, he had "sole discretion" to agree to a feature film. Any notion that he would have allowed the project to go forward as written— and at what price—was pure speculation based on an assumption of fact lacking evidentiary support. The trier of fact would have to guess whether Puzo would disapprove of the screenplay or demand an exorbitant price no producer would accept. No jury could find it "certain or reasonably certain that the rights would have been gotten" just because respondent is one of the heirs to the Estate, sister to the executor, or has health issues that elicit family sympathy.

10

Appellants' witnesses would have testified that they were "ready, willing and able to go on this deal." This begs the question of whether the Estate was willing to make a deal to sell the parties' screenplay. Appellants' expert declared that any project he might finance was "contingent upon securing the film rights from the Estate." If the Estate would not sell, it matters not if an agent, producer or director liked the screenplay. Any expert opinion that a film would go forward and would generate income for appellants would be "based on a leap of logic or conjecture." (*Sargon, supra,* 55 Cal.4th at p. 772.) Respondent would be prejudiced by having to defend against a damage claim that lacks foundation.

The jury could not infer any agreement on the part of the Estate. The only testimony about the Estate would come from its literary rights attorney, Bertram Fields, who stated in deposition that he would not allow the project to go forward: He would refuse the film rights to respondent or appellants because their screenplay was substandard; their proposed budget was too low; the rights to a novel by a famous author command a maximum price; and Jerzy Kromolowski was unacceptable as the film's director.[3] As appellants write in their brief, the Estate always follows Fields's recommendations.

---

[3] Fields's 2005 letters to other people are not relevant to his opinion in 2018 about the prospects of this screenplay by these parties. Appellants did not dispute the substance of Fields's deposition testimony at the hearing on the MIL or in their motion for reconsideration. If respondent misrepresented what Fields said, appellants could have sought a new trial or relief from the judgment based on mistake, inadvertence, surprise, or excusable neglect. (§ 473.) They cannot challenge respondent's summary of the Fields deposition or say the

11

Performing its role as a gatekeeper to exclude testimony based on conjecture and speculation, the court did not abuse its discretion here. The court stated that the Option "gives sole discretion to Anthony Puzo . . . as to what will be acceptable terms . . . including terms regarding a fixed money compensation as to the amount of the exploitation rights for any future use of the film should it be sold." The court observed that "without an agreement to transfer the film rights to Fools Die to somebody so that this screenplay could be, in fact, converted to a film, there are no damages." In short, the court said, "[A]ll of this requires both the witnesses and the jury to basically speculate" as to a possible deal and the money that might flow from it. The court's reasoning was not so irrational or arbitrary that no reasonable person could agree with it. (*Sargon, supra*, 55 Cal.4th at p. 773.) Its decision falls well within the bounds of reason and conforms to legal principles; there was no miscarriage of justice.

### 2. *Ahasverus's Complaint*

Appellants argue that the court could not grant nonsuit against Ahasverus because the MIL did not address Ahasverus's complaint. This issue was waived at the hearing. Appellants' counsel asked if the court is "nonsuiting us" on the cross-complaint and "just so the record is clear, we would also be nonsuited in the consolidated action on the Ahasverus complaint, which is essentially the same thing." The court replied, "I think that has to be. I don't think they are any different." Appellants' counsel agreed that the cases are the "same thing" and said "okay." After counsel invited the court to grant nonsuit on the Ahasverus lawsuit, appellants cannot complain that the court

---

testimony "in fact does not exist" for the first time in their reply brief on appeal.

erred by doing exactly what their attorney suggested.  In any event, appellants forfeited the issue by failing to object that the MIL was defective because it did not include Ahasverus.

### 3. *New Reliance Damages Theory*

After the court granted nonsuit, appellants moved for reconsideration, arguing that they suffered reliance damages by working on the screenplay.  Counsel said he was previously unaware his clients could claim reliance damages for a breach of contract.  At the hearing on the motion for reconsideration, appellants admitted they never raised the issue of reliance damages.  The court said, "When you have a trial, you're supposed to present all your theories at the time of trial, and you didn't."  It denied the motion, writing that appellants "never argued that they should be allowed to recover any 'reliance damages.' [T]heir effort to do so now does not constitute new evidence or law."

Appellants continue to pursue their new theory of reliance damages on appeal, as an alternative to the expectation damages alleged in their pleading.  They contend they are entitled to the reasonable value of the services they performed, which is not dependent on the film rights being acquired or a movie being made.  In support of their motion, appellants declared that the value of their services is $400,000 to $650,000.

A party may seek reconsideration "based upon new or different facts, circumstances, or law."  (§ 1008, subd. (a).)  "[A] moving party must give a satisfactory explanation for the previous failure to present the allegedly new or different evidence." (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 383; *Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1012–1013 [public policy requires parties to

13

justify reopening previously decided cases based on newly discovered evidence that could not, with reasonable diligence, have been discovered and produced at trial].)

Known facts or evidence not presented to the court do not qualify as "new." Without a showing of diligence, "[t]he miserable result would be to . . . remove an important incentive for parties to efficiently marshal their evidence." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 688–689; *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 833, 839.)

The court did not abuse its discretion by denying the motion for reconsideration because appellants did not show diligence about raising their reliance damages claim before the court considered the MIL and granted nonsuit. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457 [abuse of discretion standard].) Appellants assert that they raised the issue in their pleadings and in argument. Neither the pleadings nor the reporter's transcript support their argument. Telling the court appellants "have done a lot of work on the screenplay" is not asking for reliance damages. The value of their services is not new evidence; it was easily ascertainable but was not raised until the motion for reconsideration.

Appellants maintain that they can make "a new legal argument based on undisputed facts . . . for the first time on appeal." However, they do not identify which facts are undisputed or why they are dispositive.

The issue is not susceptible to a purely legal analysis. Reliance damages consist of the plaintiff's reasonable outlay or expenditure toward performance of the contract. (*Agam v. Gavra* (2015) 236 Cal.App.4th 91, 105.) "[T]he burden is on the plaintiff

14

to establish 'the amount which he has been induced to expend.' [Citation.]  The burden then shifts to the defendant to show the nonbreaching party's expenses were unnecessary, such that his or her recovery of reliance damages should be reduced."  (*Id.* at p. 106.)  None of the facts needed to determine reliance damages are undisputed or contained in the record in this case.

### 4.     *The Judgment on Respondent's Complaint*

Appellants argue that the court's exclusion of their damage evidence deprived them of an offset against respondent's claim to recover $30,000 plus interest on the Note.  They point to respondent's statements that repayment could come from monies generated by a film should it "come to fruition."

The court determined that the Note was clear and the debt had to be repaid, regardless of whether the Estate approved the sale of film rights.  The idea appellants could have tapped income from a film project to repay their debt did not affect the court's determination.  The Note does not refer to the money as an "advance" against future compensation from the sale of a screenplay.  Instead, it states that the debt is due and payable on or before August 1, 2012.

Respondent's oral or written statements about repaying the loan when a film came to fruition cannot be used to contradict the Note.  Parol evidence may be used to explain ambiguities in a contract if the terms are reasonably susceptible of that meaning, but cannot be used to contradict the contract or add new terms.  A written agreement "may not be contradicted by prior or contemporaneous agreements.  [This] necessarily bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement.  '[A]s a matter of substantive law such evidence

15

cannot serve to create or alter the obligations under the instrument.' " (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 344; Civ. Code, § 1625; Code Civ. Proc., § 1856, subd. (a).) The courts cannot rewrite the Note to add new terms limiting appellants' repayment obligation to the sale of a screenplay or production of a film when the Note says the debt is due on a specified date.

### 5. *Costs Award*

The court awarded respondent expert witness fees of $12,150. The award was based on respondent's statutory offers to compromise.[4] A prevailing party may recover the cost of witness fees if she obtained a more favorable judgment at trial than a pretrial statutory offer she made to the opposing party. (§ 998.)

Respondent offered in 2015 to settle her complaint for $25,000 and to settle appellants' cross-complaint by paying them $5,000. Appellants told the court that Puzo's offer to compromise was "nominal" and she "could not reasonably have expected [them] to accept." Appellants asked the court to exercise its discretion and deny witness fees.

The court found the offer was made in good faith, rejecting appellants' argument that a $5,000 offer on the cross-complaint was nominal. Appellants challenge these findings. We review the court's determination on the validity and reasonableness of a settlement offer for an abuse of discretion. (*Mesa Forest Prods. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 329.)

---

[4] Respondent sought $18,550 in expert fees; the court reduced the request by $6,400 because some fees were incurred before the offer to compromise.

16

Section 998 is designed to encourage pretrial settlement. (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280.) An offer to compromise must be made in good faith and carry some reasonable prospect of acceptance. (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1528.) A party making a modest offer may do so in good faith based on a reasonable expectation of prevailing at trial. (*Culbertson v. R. D. Werner, Co., Inc.* (1987) 190 Cal.App.3d 704, 710–711.)

Respondent believed she would prevail because she controls the disposition of the screenplay under the Agreement and did not wish to create a film because she disliked the screenplay. Also, she knew appellants lacked proof that the Estate would sell its film rights. Respondent prevailed, which is prima facie evidence her modest offer was reasonable. (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 117.) Under the circumstances, the court did not abuse its discretion by awarding expert fees.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to recover her costs on appeal.

NOT TO BE PUBLISHED.


LUI, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

18